UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY M. O'NEAL,

                Plaintiff,

      v.

KING COUNTY, *et al.*,

                Defendants.

CASE NO. 2:24-cv-00682-RSL

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "King County's Motion for Summary Judgment." Dkt. # 21. Plaintiff alleges that defendants failed to accommodate her religious beliefs in violation of Title VII, 42 U.S.C. § 2000e and RCW 49.60.180. Defendants argue that the claims fail as a matter of law because plaintiff's objections to the COVID-19 vaccine could not be accommodated without undue hardship.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 1

judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

On August 10, 2021, the King County Executive issued an order requiring all County executive branch employees to be fully vaccinated against COVID-19 by October 18, 2021, unless they were entitled under law to an accommodation on account of disability or religious belief. Exec. Order No. ACO-8-27-EO (found at https://kingcounty.gov/en/search).[1] At the time, plaintiff was employed as a rail operator

---

[1] The Court takes judicial notice of the fact that the conduct of which plaintiff complains occurred during the COVID-19 pandemic and of the cited Executive Order. *Denis v. Ige*, 538 F. Supp. 3d 1063, 1068-69 (D. Haw. 2021) (taking judicial notice of public health statements and emergency proclamations published on the internet).

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 2

on King County Metro's light rail system. On September 15, 2021, plaintiff claimed a religious exemption to the vaccination requirement and requested accommodation. Dkt. 24-1. She notified her employer that taking abortion-tainted vaccines into her body would violate the anti-abortion teachings of her religion, that her body is a temple of the Holy Spirit, and that non-vaccine measures offered adequate protection given that Metro had operated for almost a year without vaccines and that vaccines did not prevent the spread of the virus. Dkt. 24-1 at 4.

Plaintiff's religious exemption request was approved. Dkt. 25 at ¶ 16. As part of the interactive accommodations process, an HR Professional met with plaintiff and discussed her job requirements and potential accommodations. Dkt. 25-3. Defendants considered potential accommodations, including plaintiff's suggestion that she continue to perform her duties as before, with testing and quarantining, but found that a reasonable accommodation that would allow plaintiff to safely perform the essential functions of her job was not available. Dkt. 24 at ¶¶ 19-20. Plaintiff's request for an accommodation was denied. She waived her right to a *Loudermill* hearing and did not provide a written submission. Dkt. 24 at ¶ 22. Her employment at King County was terminated on March 11, 2022. Dkt. 24-3.

## DISCUSSION

To allege a prima facie case of religious discrimination under a Title VII failure-to-accommodate theory, an employee must show that "(1) [s]he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [s]he informed [her] employer of the belief and conflict; and (3) the employer threatened [her] with or subjected [her] to discriminatory treatment, including discharge, because of [her] inability to fulfill the job requirements.*" Detwiler v. Mid-Columbia Med. Ctr*., 156 F.4th 886, 893 (9th Cir. 2025) (quoting *Heller v. EBB Auto Co*., 8 F.3rd 1433, 1438 (9th Cir. 1993) (internal alterations as in *Detwiler*)). Similarly, a prima facie claim of failure to accommodate

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 3

religious practices under the WLAD requires a showing that (1) plaintiff had a bona fide religious belief, the practice of which conflicted with employment duties; (2) she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment. *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 501-02 (2014). Once a plaintiff has alleged a prima facie case of religious discrimination, the burden shifts to the employer to show "that it offered the employee a reasonable accommodation or that an accommodation would be an 'undue hardship' on the employer." *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 502 (2014). *See also Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023). A "hardship is more severe than a mere burden" and the "modifier 'undue' means that the requisite burden, privation, or adversity must rise to an 'excessive' or 'unjustifiable' level." *Groff v. DeJoy*, 600 U.S. 447, 469 (2023). To establish undue hardship, an employer "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business," taking into account "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating costs of an employer." *Id.* at 470 (internal citation, quotation marks, and alterations omitted). "Undue hardship is shown when a burden is substantial in the overall context of an employer's business." *Keene v. City and County of San Francisco*, No. 24-1574, 2025 WL 341831, at *2 (9th Cir. Jan. 30, 2025).

In the context of COVID-19 vaccine accommodation cases, courts have found that non-economic costs, such as adverse impacts on an employer's mission and potential safety risks, are relevant factors to be considered. *Lavelle-Hayden v. Legacy Health*, 744 F.Supp.3d 1135, 1157-59 (D. Or. 2024); *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp.3d 1117, 1134–35 (C.D. Cal. 2023). *See also Groff*, 600 U.S. at 475-76 (J. Sotomayor, concurring) (non-COVID case acknowledging that "the conduct of the employer's

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 4

business" includes the business' labor force, making deprivations and hardships imposed on co-workers relevant to the undue hardship analysis); *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988) (non-COVID case acknowledging spiritual costs). In addition, the reasonableness of an accommodation must be evaluated based on the knowledge and information available to the employer at the time the accommodation decision was made. *Efimoff v. Port of Seattle*, No. 2:23-CV-01307-BAT, 2024 WL 4765161, at *13 (W.D. Wash. Nov. 13, 2024); *Lavelle-Hayden*, 744 F.Supp.3d at 1150, 1152, 1158.

By the winter of 2021-2022, the Pacific Northwest had lived through two years of COVID-19 infections, and it was generally understood that the SARS-CoV-2 virus spread from person to person through aerosol transmission,[2] that infected persons could spread the virus before the onset of symptoms, and that older adults or those with certain underlying medical conditions were at higher risk for developing a severe, potentially deadly, COVID-19 illness. Dkt. # 28-1 at ¶ 8. After reviewing the job duties and surroundings of a King County Metro light rail operator, defendants' expert, Dr. Lynch concluded that the setting creates a risk for transmission of COVID-19 to both co-workers and the public. Dkt. 28-1 at ¶¶ 86-90. Dr. Lynch opined that, given plaintiff's "job duties, which entailed interactions with co[-]workers and customers, any of whom may have risk factors for severe COVID-19 outcomes, including death, it is my opinion that, had the County allowed [p]laintiff to continue her employment unvaccinated, it would have significantly increased the risk that [p]laintiff would infect co-workers and members of the public with COVID-19 or contract the virus herself" and that masking, shields/barriers, social distancing, testing, hand washing, showering, sanitizing spaces and boots, etc. would not

---

[2] The relatively recent realization that the virus was transmitted through aerosol rather than droplets "implied that infections could occur over greater distances than previously thought, and in spaces that were previously inhabited by individuals with COVID-19. This mechanism explained cases and outbreaks of transmission spread over distance and over time versus direct, near contact." Dkt. # 22-1 at ¶ 68.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 5

be adequate to mitigate that risk. Dkt. 28-1 at ¶¶ 93-95. Plaintiff's job description involves customer service and assisting passengers with special needs as well as operating the light rail vehicles. Dkt. 23-1. The governing rulebook and standard operating procedures similarly require operators to wake sleeping patrons, assist special needs passengers, attempt to ensure that passengers with disabilities have access to priority seating, and respond to passenger inquiries. Dkt. 23-2 at 75; Dkt. 23-5 at 4. In addition, operators must obtain run cards for the day, check the train for defects prior to leaving the yard, and confer with the relieving operator. Dkt. 23-2 at 72 and 76. These activities involve regular and unavoidable interactions with co-workers and the public, including close physical proximity to the dispatcher, sharing space with other operators in the ready room, the break room, and/or a conference room, contact with passengers on platforms and in cars when entering/leaving, interactions with relieving/relieved operators, and sequential use of the confined cab of the light rail vehicle. Dkt. 23 at ¶¶ 17-27; Dkt. 30-2 at 8-19. In addition, plaintiff had student operators in her cab on a number of occasions and, in emergency situations, she would have been required to assist with de-boarding and stay with the passengers. Dkt. 23-3; Dkt. 30-2 at 22. The Court finds that, given plaintiff's job duties (both as described in the governing employment documents and as actually performed in the spring of 2022), allowing plaintiff to continuing working unvaccinated would have significantly increased the risk that she would infect other employees and members of the public with the virus or contract COVID-19 herself and that using available non-pharmaceutical interventions in the absence of the vaccine would not be adequate to mitigate that risk.[3]

---

[3] Defendants produced the declaration and report of Dr. John B. Lynch, a board-certified infectious disease clinician, a Professor of Medicine at the University of Washington School of Medicine, and the Associate Medical Director at Harborview Medical Center. Dr. Lynch led UW Medicine's response to the COVID-19 pandemic from February 2020 to December 2023. Dkt. # 22-1 at ¶ 2. Although plaintiff relies on an expert report that questions the efficacy of the COVID-19 vaccinations and/or the way in which Metro instituted the vaccine mandate, the report does

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 6

Plaintiff asserts that a reasonable jury could find that her unvaccinated status could have been accommodated by putting her on a reduced work schedule or reallocating her responsibilities. Regardless whether she worked one or five days per week, any day on which she appeared in the workplace to operate a light rail vehicle would result in increased risk to others. With regards to the reallocation of her job responsibilities, plaintiff suggests that the in-person components of her job could be reassigned. Dkt. 29 at 11. As described by both plaintiff and defendants, however, the basic function of a light rail vehicle operator – operating a light rail vehicle -- could not be carried out without an in-person fitness-for-duty check, interactions with the relieving or relieved operator, passing through the passenger compartment to access the cab, and crossing the platform at the end of each run.

Plaintiff argues that defendants failed to show that allowing her to use non-pharmaceutical interventions would "undue hardship" in the absence of concrete, quantifiable evidence regarding the costs of such interventions. "Costs" that employers (and the reviewing courts) consider are not limited to financial expenditures: they also include non-monetary impacts such as an "accommodation's effect on co-workers" that "may have ramifications for the conduct of the employer's business," *Groff*, 600 U.S. at 472, as well as any "cost to an employer's mission," *Lavelle-Hayden*, 744 F. Supp. 3d at 1151. "[W]hen a proposed accommodation compromises safety in the workplace, this, too, can be an undue hardship." *Id*. at 1157 (citing *Kalsi v. N.Y.C. Transit Auth*., 62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999)). Almost every court to consider the matter, including this one, agrees that an accommodation which poses a significant health or safety risk to co-workers or customers constitutes an undue hardship for purposes of a failure-to-accommodate claim. *Hall v. Sheppard Pratt Health Sys., Inc*.,

___

not contradict Dr. Lynch's opinions regarding the risks posed by an unvaccinated light rail operator during the relevant period.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 7

155 F.4th 747, 754 (4th Cir. 2025); *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1220 (9th Cir. 2025); *Savel v. MetroHealth Sys.*, No. 24-4025, 2025 WL 1826674, at *2 (6th Cir. July 2, 2025); *Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85 (1st Cir. 2025); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021); *Carlson v. City of Redmond*, No. 2:22-CV-01739, 2025 WL 3496535, at *10 (W.D. Wash. Dec. 5, 2025); *Eshom v. King Cnty.*, No. 2:23-CV-00028-JNW, 2025 WL 3187479, at *9 (W.D. Wash. Nov. 14, 2025); *North v. Washington*, No. 3:23-CV-05552-TMC, 2025 WL 2721207, at *14 (W.D. Wash. Sept. 24, 2025); *Lisoski v. King Cnty.*, No. 2:23-CV-00536-RSL, 2025 WL 2511243, at *5 (W.D. Wash. Sept. 2, 2025) (collecting earlier cases). Even courts that deny motions for summary judgment on the issue recognize that accommodations which would increase the risk of COVID-19 infections pose an undue hardship: the sticking point in those cases is that defendants had not established as a matter of law that such risks would arise. *Shirley v. Washington State Dep't of Fish & Wildlife*, No. 3:23-CV-05077-DGE, 2025 WL 1374977, at *14 (W.D. Wash. May 9, 2025) (defendants failed to show that allowing plaintiffs to continue working unvaccinated "would have posed an undue hardship within the specific context of the workplace at [the Department of Fish & Wildlife] during the relevant time period."); *Strandquist v. Wash. State Dep't of Soc. & Health Servs.*, No. 3:23-CV-05071-TMC, 2024 WL 4645146, at *12 (W.D. Wash. Oct. 31, 2024), *reconsideration denied*, No. 3:23-CV-05071-TMC, 2024 WL 4979859 (W.D. Wash. Dec. 4, 2024) (no evidence that defendant evaluated the risks the proposed accommodation posed or whether the accommodation would be cost-prohibitive); *Varkonyi v. United Launch Alliance, LLC*, No. 2:23-CV-00359-SB-MRW, 2024 WL 1677523 (C.D. Cal. Feb. 21, 2024) (finding that the lack of evidence regarding infection rates among defendant's employees now that the vast majority had complied with the vaccine mandate precluded judgment as a matter of law in defendant's favor). Based on the summary judgment record, no reasonable jury could conclude that plaintiff's

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 8

unvaccinated status could have been accommodated in the spring of 2022 without imposing significant and increased risks of infection on plaintiff, her co-workers, and the transiting public or that such risks are not an undue hardship on the employer.

In making this finding, the Court does not mean to suggest that the fact-specific inquiry regarding undue hardship in a COVID-19 vaccine case can be satisfied simply by pointing to a public health crisis and the scientific consensus that vaccination was the best way to reduce viral transmission and improve public health. After all, the vaccine mandate itself contemplated exemptions for religious and/or medical reasons. It is entirely possible that some Metro positions could be performed remotely or in such a way that an unvaccinated employee would not come in contact with and threaten the safety of defendants' employees or patrons. But in this case, the relevant factors show that plaintiff could not perform the essential responsibilities of her job without posing just such a risk.[4]

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.[5]

DATED this 30th day of March, 2026.

Robert S. Lasnik
United States District Judge

---

[4] To the extent plaintiff argues that the vaccine mandate was not strict enough or was ineffective because it did not require booster shots, the issue in this litigation is not the wisdom of the vaccine mandate itself, but whether defendants failed to accommodate plaintiff's religion when carrying out the mandate. *See Shirley*, 2025 WL 1384803, at *4.

[5] Defendants' motion to exclude the expert testimony of Ram Duriseti (Dkt. 27) is DENIED as moot.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 9